LEO CREPEAU *vs.* WANSKUCK COMPANY—STEERE MILL.

AUGUST 4, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an employee's petition to review an award, by the director of labor, of compensation for total incapacity from November 6, 1950 to March 19, 1951. The petition is based on the ground that such incapacity has recurred and increased since the latter date. The case is

here on the petitioner's appeal from a decree of the superior court denying and dismissing the petition.

The petitioner received an injury to his neck and left lower shoulder blade which the director of labor found arose out of and in the course of his employment in respondent's mill and that he was totally incapacitated thereby until March 19, 1951. The respondent took no appeal from that decision but paid the award of compensation in full. Before the case was heard by the director on May 18, 1951, petitioner on March 19, 1951 of his own accord had taken a job at the Industrial Tool Company where he earned wages equal to or more than those he had received from respondent. He worked there until the last week in July 1951 when he was discharged.

He claimed he was discharged because he could not work steadily and that this was due to the pain in his left shoulder, neck and upper back. On such ground he filed the instant petition and sought to show that he had again become totally incapacitated as a result of his old injury. At the hearing in the superior court on June 11, 1953 he testified that he always had the pain in his left shoulder, neck and upper back, and that he had continued taking treatments for it after March 19, 1951; that he wore a Thomas collar for relief; that he thought he could work after March 19, 1951 and so he took the job at the Industrial Tool Company; and that he found he could not work steadily but on several occasions had to be absent because of the pain from his injury.

Doctor George A. Keegan, his attending physician, testified that petitioner was totally disabled by his old injury; that he had not recovered therefrom on March 19, 1951; that he was still disabled at the trial; and that at that time he could not do his regular work, although later he might be able to do light work. Doctor Ernest D. Thompson, who examined petitioner in November 1951, felt that at that time he was disabled by his injury; that any attempt

to do his regular work might cause further injury; and that he could do light work. However, he admitted petitioner had told him that he, petitioner, could then do his regular work but that none was available. The doctor testified that notwithstanding such statement he was of the opinion petitioner was not able to do such work but could do light work.

Doctor Herbert E. Harris was called by respondent and testified that he examined petitioner on October 30, 1951 with reference to his entire spine and that he had also examined X rays thereof. Based on such examinations, his opinion was that petitioner was suffering from cervical arthritis of long duration but that he was not disabled thereby and could do his regular work. On cross-examination the doctor admitted that trauma could aggravate such condition.

It is apparent from the above summary of the testimony that there is a clear conflict as to whether petitioner is presently incapacitated totally or partially. If the decree denying liability rested on the ground that he was no longer incapacitated it would not be necessary for us to inquire further, since the superior court's findings of fact are, in the absence of fraud, made conclusive by the workmen's compensation act, general laws 1938, chapter 300, article III, §6. However, the decree appears to assume that petitioner is disabled and that his incapacity since March 19, 1951 is not due to the injury he received in respondent's employ but to a degenerative progressive type of arthritis in the cervical spine. There is a further finding in the decree: "3. That the petitioner's present disability is due to any aggravation that he may have suffered while working for the Industrial Tool Company, and to the growth of the arthritis within his system, after said March 19, 1951."

In these circumstances the question for us to decide is not whether there is any legal evidence that petitioner is inca-

pacitated, but whether there is any such evidence upon which the superior court could reasonably base its third finding above quoted. We find no evidence that petitioner's duties at Industrial Tool Company caused his present inability to work. There is, however, substantial medical evidence directly or by way of inference on the question whether petitioner's arthritic condition, aside from the injury, was the real cause of such inability. That evidence is conflicting.

It was the opinion of Dr. Keegan that such inability to work was due to the aggravation of the arthritis by the injury and that such aggravation had been continuous to the present time. Doctor Thompson agreed that the trauma suffered in the accident was the cause of petitioner's present aggravated condition. On the other hand, Dr. Harris was positive that petitioner's present condition was the result of the progressive nature of his arthritis. The trial justice was impressed with Dr. Harris' opinion and accepted it as the basis of his finding that petitioner's disability after March 19, 1951 resulted from "the growth of the arthritis within his system * * *."

There was also evidence that, before petitioner entered the employ of respondent, he had an arthritic condition in his back and that while working in a well on his farm in 1948 he had suffered an injury including a wrenched shoulder. Doctor Keegan treated him at that time for such injury and for his arthritic condition which the injury had apparently lighted up. After he recovered he obtained employment with respondent and worked there steadily until he received the present injury on or about November 3, 1950. Apparently he also recovered from that injury, or at least there was evidence from which the trial justice could have reasonably found that he did. He himself alleged that his disability from such injury had ceased when he filed his application for compensation from November 6, 1950 only to March 19, 1951. In determining whether his

present incapacity was due to the injury, the trial justice was entitled to consider petitioner's long-standing arthritic condition in connection with Dr. Harris' opinion and to consider also that the petitioner had told Dr. Thompson in November 1951, which was after petitioner's examination by Dr. Harris in October 1951, that he was able to do his regular work but that none was available.

After careful consideration we are of the opinion that there was legal evidence to support the finding of the superior court that the injury which petitioner received in respondent's employ was not the cause of his present disability. However, we are also of the opinion that the third paragraph of the decree should be modified to read: "3. That the petitioner's present disability is due to the growth of the arthritis within his system, after said March 19, 1951."

The petitioner's appeal is denied and dismissed, the decree appealed from is modified as above stated, otherwise it is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Joseph V. Ortoleva*, for petitioner.

*Worrell & Hodge, Lee A. Worrell*, for respondent.